HARDY, Judge.
This is a suit instituted by plaintiff, T. W. Brown, individually and as natural tutor of his son, Joey Brown, for damages sustained as the result of personal injuries and slander allegedly inflicted and committed by an employee of defendant, Pak-A-Sak Service, Inc., in which action the Lumbermen’s Mutual Casualty Company is joined as the liability insurer. Counsel for plaintiff, upon the opening of trial, filed a voluntary nonsuit as to petitioner’s individual claims for damages by reason of humiliation and damage to character and reputation. The only claims left at issue involved doctor and X-ray bills in the sum of $15, for which plaintiff claims individual reimbursement, and the sum of $2,000 claimed for the use and benefit of his minor son by reason of 'humiliation, pain, suffering, damage to character and reputation, Trial was had before a jury which returned a verdict in favor of plaintiff, awarding the sum of $100 for pain and suffering and $15 for doctor and X-ray bills. Judgment was in accordance with the verdict, from which judgment plaintiff has appealed and defendants have answered the appeal, praying for the rejection of plaintiff’s demands.
The incident which gives rise to this action occurred on the night of February 14, 1950, in one of defendant corporation’s stores located at the corner of Jewella Road and Lakeshore Drive in the City of Shreveport. Petitioner alleged that his son, then 14 years of age, was sent to the store by his mother for the purpose of purchasing a loaf of bread; that while attempting to make the stated purchase, and additionally to buy a nickel bar of candy, he was assaulted by one Jack F. Igo, an employee of defendant corporation, at the time in charge of, and the only employee present in, the store; that the minor was slapped, yanked by the hair, violently thrown to the floor by the said Igo, sustaining numerous bruises and contusions as the result thereof, and that he was further accused by the said Igo of attempting to steal the bar of candy.
The facts developed on trial show that, just prior to Joey Brown’s arrival at the store, a number of boys, members of a Boy Scout Troop returning from scout meeting, were in the store partaking of soft drinks and apparently frolicking around. Upon his arrival at the store young Brown appears to have requested Igo to change a ten dollar bill and was accommodated in this respect by being given two five dollar bills. Thereupon he procured a loaf of bread, reached for a bar of candy, observed that it was not the kind he wanted, put it back and took from the rack another bar of candy. At this time he was roughly enjoined by Igo to “quit horsing around” and almost immediately Igo slapped young Brown, catching him only a glancing blow, after which he reached over the counter, grasped the boy by the hair, yanked him roughly against the counter and threw him forcibly to the concrete floor. Although these facts are strenuously denied by defendants, we think they have been unquestionably established by an overwhelming preponderance of the evidence. Additionally, there is no doubt as to the fact that Igo charged the young boy with thievery and ordered him from the store.
*473 The youth immediately returned to his home, related the incident to his father, and accompanied his father and another man to the store. The father, rightfully incensed, upon identification by his son of Igo as his attacker immediately proceeded to give Igo a more or less thorough heating. As to whether he was assisted in this effort by his friend, and even by Joey, and others who appeared upon the scene, is a matter of dispute. Criminal charges were subsequently preferred by the minor’s father and Igo was convicted of assault.
We have had not the slightest difficulty in reaching the conclusion that the finding of the jury in favor of plaintiff is correct and is in accord with the evidence. The only question that remains is with respect to the sufficiency vel non of the award. Plaintiff complains bitterly of the inadequacy of the amount allowed, and in support of such complaint points out the physical injuries, luckily of a temporary nature, and the mental suffering accruing to the young boy as the result of the slander. We proceed to a discussion of these items of damage.
Young Brown was examined on the morning following the assault by Dr. Keith Mason of Shreveport, whose testimony was uncontroverted with respect to the injuries. In part Dr. Mason testified as follows: “I examined him and he had bruises of his left chest; some 'black and blue spots on his left chest; the muscles were sore in his left chest, and the back of his neck was sore and tender, although there weren’t any bruises there, and he was bruised and sore in 'his right groin, and there was a black and blue spot on his upper thigh; it was sore. An x-ray was made of his chest, which showed no rib fractures or other pathology.”
Dr. Mason further testified that he strapped the boy’s chest for the purpose of immobilizing it, advising him to take things easy and to report back in several days, which instructions were followed. The doctor further told the boy, who was employed as a carrier by a local newspaper, not to attempt to carry his papers until the soreness had disappeared.
It is established that young Brown was forced to remain out of school for a period of about a week, more or less; that he was unable to carry his paper route for approximately two weeks. Though his injuries were not serious, doubtless they were painful and caused some considerable amount of inconvenience and discomfort during this period.
We find the resolution of the question of damage sustained by reason of the slander somewhat more difficult. Again the testimony is rather vague and indefinite, but we are nonetheless convinced that some damage resulted. There is testimony to the effect that the young boy was subjected to some amount of teasing and harassment by his schoolmates and acquaintances. The incident was publicized in the local press and on occasions Joey was taunted, whether or not maliciously is not established, with the epithet “thief”, and was questioned as to his stealing activities. Human nature being what it is, and recognizing the somewhat callous quality of humor of the young male animal, we question whether these matters have seriously, harmfully and en-duringly affected young Brown. But we are convinced that they resulted in considerable embarrassment and would be inclined to leave scars, though of minor degree, and certainly they have, temporarily, adversely affected the happiness and mental well-being of the young boy. The assessment of a monetary award with respect to these imponderables must of necessity be somewhat arbitrary in view of the absence of any fixed and certain guide or standard.
After serious study and thorough consideration, influenced by our conclusion that the assault, both physical and verbal, was without provocation, we find that the award made by the jury is insufficient.
For the reasons assigned the judgment appealed from is amended and there is now judgment in favor of the plaintiff, T. W. Brown, individually, in the sum of $15'.
It is further ordered, adjudged and decreed that there be judgment in favor of the plaintiff, T. W. Brown, for the use and benefit of his minor son, Joey Brown, in the *474 full sum of $750 with interest at the rate of 5% per annum from the date of judicial demand until paid.
As amended the judgment appealed from is affirmed at appellee’s cost.